# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHILLYWINE LLC,

      Plaintiff,

v.

KSWCO LLC, SALKEDS LLC, THE
NATIONAL WINE SCHOOL LLC, ALANA
ZERBE and KEITH WALLACE,

      Defendants.

Case No. 2:26-cv-01268-JDW

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.     RELEVANT BACKGROUND ........................................................................... 2

III.     ARGUMENT ...................................................................................................... 7

       A.   Plaintiff Cannot Show Likelihood of Success on the Merits Primarily Because It Fails to Establish That It Has a Protectable Mark ...................................................................... 8

       B.    Defendants Did Not Knowingly Make False Representations Regarding Plaintiff, and Plaintiff Will Not Suffer Irreparable Harm Absent the Injunction. ................................... 23

       C.    Balance of Equities Tips in Defendants' Favor. ........................................................ 25

       D.    Public Interest Weighs Highly in Favor of Denying the Injunction. ......................... 27

IV.     CONCLUSION ................................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
237 F.3d 198 (3d Cir. 2000)......................................................................................................17

*All. Bank v. New Century Bank*,
742 F. Supp. 2d 532 (E.D. Pa. 2010) .......................................................................................20

*Anhing Corp. v. Thuan Phong Co.*, 215 F. Supp. 3d 919 (C.D. Cal. 2015) ...............................23

*In re Bose Corp.*,
580 F.3d 1240 (Fed. Cir. 2009)................................................................................................20

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ..................................22

*Caplan v. Fellheimer Eichen Braverman & Kaskey*,
68 F.3d 828 (3d Cir. 1995).......................................................................................................24

*Checker Cab of Phila. Inc. v. Uber Tech.*, Inc., 643 F. App'x 229 (3d Cir. 2016) .......................23

*Com. Nat'l Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*,
214 F.3d 432 (3d Cir. 2000).....................................................................................................13

*Douglas v. Osteen*,
307 F. App'x 97 (3d Cir. 2009) ..................................................................................................9

*E.T. Browne Drug Co. v. Cococare Products, Inc.*,
538 F.3d 185 (3d Cir. 2008)..................................................................................................9, 27

*EAT BBQ LLC v. Walters*,
47 F. Supp. 3d 521 (E.D. Ky. 2014) .........................................................................................12

*Educ. Testing Servs. v. Katzman*,
793 F.2d 533 (3d Cir. 1986)......................................................................................................26

*Ferring Pharm., Inc. v. Watson Pharm., Inc.*,
765 F.3d 205 (3d Cir. 2014)........................................................................................................7

*Ford Motor Co. v. Summit Motor Prods., Inc.*
930 F.2d 277 (3d Cir. 1991)......................................................................................................13

*Gaydos v. Gaydos*,
693 A.2d 1368 (Pa. Super. Ct. 1997)........................................................................................10

ii

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*,
  774 F.3d 192 (3d Cir. 2014)...................................................................................7

*I.M. Wilson, Inc. v. Grichko*,
  No. 18-5194, 2019 WL 5394113 (E.D. Pa. Oct. 22, 2019) ......................................7

*Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*,
  679 F. Supp. 3d 53 (D.N.J. 2023) ..........................................................................22

*Interpace Corp. v. Lapp, Inc.*,
  721 F.2d 460 (3d Cir. 1983): (1)................................................................17, 18, 19

*Kos Pharms., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004)..................................................................................18

*Lucent Info. Mgmt., Inc., v. Lucent Tech., Inc.*,
  186 F.3d 311 (3d Cir. 1999)..................................................................................20

*Mallet & Co. Inc. v. Lacayo*,
  16 F.4th 364 (3d Cir. 2021) .................................................................................26

*Murthy v. Missouri*,
  603 U.S. 43 (2024)...............................................................................................24

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) .......................................26

*Nichino Am. Inc. v. Valent U.S.A. LLC*,
  44 F.4th 180 (3d Cir. 2022) ...........................................................................24, 25

*Opticians Ass'n of Am. v. Independent Opticians of Am.*,
  920 F.2d 187 (3d Cir. 1990)............................................................................25, 27

*Pac-W. Distrib. NV LLC v. AFAB Indus. Servs., Inc., 674 F. Supp. 3d 132 (E.D.
  Pa. 2023)*........................................................................................20, 22, 23

*Primepoint, LLC v. Primepay, Inc.*,
  No. 06–1551, 2009 WL 1884369 (D.N.J. June 30, 2009) .......................................18

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ........................................7

*Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033 (T.T.A.B. 1981) ...............................21

*Warren Pub. Co. v. Spurlock*,
  645 F. Supp. 2d 402 (E.D. Pa. 2009) ..............................................................11, 12

**Statutes**

15 U.S.C. § 1116(a) ..............................................................................................24

15 U.S.C. § 1127 .................................................................................................................11

15 U.S.C. § 1115(a) .......................................................................................................20, 27

**Other Authorities**

*Trademark Process*, USPTO (last accessed Mar. 9, 2026),
   https://www.uspto.gov/trademarks/basics/trademark-process...................................................11

Defendants KSWCO LLC, SALKEDS LLC, The National Wine School LLC, Alana Zerbe, and Keith Wallace (collectively, "Defendants"), by and through their undersigned counsel, hereby submit this Response in Opposition to Plaintiff PhillyWine LLC's ("Plaintiff") Motion for Preliminary Injunction.

## I.  INTRODUCTION

The Wine School of Philadelphia ("Wine School") was colloquially known as the "Philly Wine School" for nearly its entire existence, dating back to at least 2005. From its beginning, the Wine School of Philadelphia operated a brick-and-mortar location, hosting in-person classes in its own building. The Plaintiff's organization, which was owned and operated by instructor Neal Ewing ("Ewing"), primarily used space at universities and other nonpermanent venues. While the Wine School catered more to, but not exclusively to, the casual wine drinker, Ewing's courses were geared toward wine academics. For more than two decades, the entities mostly coexisted without friction, each occupying its own place in the Philadelphia wine community.

This changed in 2022 when Noelle Allen ("Allen") and Matt Kirkland ("Kirkland") allegedly purchased the organization that had been known as Neal Ewing Wine Services and formed a new company, PhillyWine LLC. The change in ownership caused two major issues, each of which resulted in a substantial loss of business to the Wine School.

First, and most obviously, Allen and Kirkland, no longer wanting to identify themselves with the now-retired Ewing, dropped "Neal Ewing" from their name and adopted the moniker of PhillyWine. While the domain phillywine.com had linked to Ewing's website prior to the Allen and Kirkland purchase, this is simply not how Ewing's program had been most commonly known. Second, Allen and Kirkland opened a brick and mortar location right down the street from the Wine School. This brand confusion resulted in a significant loss in student enrollment at the Wine School.

None of this was an accident. Allen, a former student of the Wine School, no doubt saw the opportunity to move nearby and siphon off the Wine School's students by using the Wine School's trade name. At the same time, Plaintiff changed its Instagram handle from "@_phillywine_" to "@phillywineschool." Plaintiff also altered certain online listings and Google business profiles to reference "PhillyWine School," and Allen and Kirkland began referring to themselves online as the owners of the "PhillyWine School."

To counteract this brand misappropriation, Keith Wallace ("Wallace"), the principal of the Wine School, applied for and received a trademark for "Philly Wine School." Wallace then contacted Instagram, which suspended the Plaintiff's account. In response, Plaintiff filed this suit.

Plaintiff primarily utilizes two tactics in attempting to obtain injunctive relief. First, it bases its argument on the false premise that "PHILLYWINE," "PHILLYWINE.COM," and "the PHILLY WINE school," can be used interchangeably, defining each as the same term and then arguing that because Neal Ewing possessed the phillywine.com domain name before the Wine School was referred to as "Philly Wine School," it is the common law owner of the "Philly Wine School" mark. It is only through that bait-and-switch that Plaintiff advances its position at all.

Second, because Plaintiff defined multiple different marks as one single mark, it is able to paint Wallace as a baseless aggressor who purportedly infringed upon a mark it has used for more than 25 years. Compounding the fact that the Plaintiff does not own a mark in Philly Wine School with its only plausible immediate irreparable harm being the takedown of its Instagram account (which Defendants offered to give back if Plaintiff only uses a different handle), it is clear that Plaintiff's request for preliminary injunctive relief is baseless. The injunction should be denied.

## II.  RELEVANT BACKGROUND

Keith Wallace moved to Philadelphia in 2001 after prior careers as a journalist, chef, and winemaker. *Id.* ¶ 3. *See* Declaration of Keith Wallace ("Wallace Decl."). A true and accurate copy

of the Wallace Decl. is attached hereto as **Exhibit 1** and incorporated by reference herein. Shortly after arriving, Wallace began teaching introductory wine classes at Chaddsford Winery. *Id.* ¶ 4. Those classes quickly became popular and demonstrated a strong demand for accessible wine education among a wide range of students. *Id.* ¶ 5. After leaving Chaddsford, Wallace began developing an independent wine education program in Philadelphia, initially hosting classes at temporary venues in Manayunk under the name "WineLust." *Id.* ¶ 7. The concept evolved quickly and, within the first year, Wallace renamed the project the "Wine School of Philadelphia," reflecting his broader vision of building a structured educational institution devoted to wine study. *Id.* ¶ 8.

By 2003 Wallace leased a storefront at 2006 Fairmount Avenue, then moved to Rittenhouse before settling in 2015 at its current home at 109 South 22nd Street. *Id.* ¶¶ 11, 27, 31. During this formative period, the Wine School hosted classes, courses, and events several days per week, often running multiple sessions simultaneously, and built a substantial community of students and wine professionals. *Id.* ¶¶ 28, 32.

From its inception, the Wine School was designed as a dedicated educational institution rather than a series of informal tasting events. *Id.* ¶¶ 9–10. Curriculum emphasized sensory-based learning and analytical tasting rather than rote memorization or exam preparation. *Id.* ¶¶ 13–16. The school's foundational course—originally called "Wine Basics" and later renamed the Wine Foundation Program—trained students to blind taste wines and identify varietals, production methods, and stylistic characteristics. *Id.* ¶ 17. The Wine School now includes intermediate and advanced programs and a professional certification track. *Id.* ¶ 19.

As the Wine School grew, it developed a strong reputation among students and the media. *Id.* ¶ 20. During this period, consumers and journalists began referring to the school using shorthand names, including "the Wine School" and "Philly Wine School." *Id.* ¶ 21. For example,

3

in the October 5–11, 2005 edition of Graffiti Magazine, a reporter referred to the Wine School as the "Philly Wine School." *Id.* ¶ 22. The Wine School embraced this nickname because it resonated with students and lay members of the local wine community. *Id.* ¶ 21. Effectively, the "Philly Wine School" mark made wine education programming feel more accessible to non-professionals. Over time, the phrase "Philly Wine School" became associated with the Wine School's consumer-focused educational programming. The Wine School began using "Philly Wine School" specifically to refer to its consumer-oriented classes beginning around 2016 and continuing thereafter. *Id.* ¶ 67. The name appeared in media coverage and promotional materials, and Wallace used related social media branding—including the Instagram handle @phillywine—to promote the school's consumer classes. *Id.* ¶¶ 67–68.

While the Wine School was developing its programs, Neal Ewing operated a separate wine education program in the Philadelphia area. Ewing's program primarily operated under the name "Neal Ewing Wine Services" and used the website domain phillywine.com. *Id.* ¶¶ 41, 47. Unlike the Wine School, which maintained dedicated classroom facilities, Ewing's classes were held in temporary spaces at restaurants, hotels, or college campuses. *Id.* ¶ 42. Throughout the years that both programs operated in Philadelphia, Ewing did not consistently refer to his business as a "school," nor did he use the name "Philly Wine School." *Id.* ¶¶ 41, 46. Industry publications, including WSET yearbooks, referred to Ewing's program as Neal Ewing Wine Services as recently as 2022 and 2023. *Id.* ¶ 45. Ewing never operated an Instagram, did not advertise, and had scant online presence outside of his phillywine.com website. *Id.* ¶¶ 50, 76.

Following the COVID-19 pandemic, Wallace learned that Ewing planned to retire and discontinue his wine education programming. *Id.* ¶ 83. In 2022, a new company—PhillyWine LLC—was formed by Allen and Kirkland. *Id.* ¶ 84. PhillyWine LLC acquired the phillywine.com domain and began operating a wine education program under the name "PhillyWine." *Id.* ¶¶ 44,

4

84. At the time Plaintiff founded itself, numerous other entities and individuals around Philadelphia also used the terms "Philly" and "Wine" to describe their wine-related endeavors. *See id.* ¶ 72(c).

For a period of time, the new PhillyWine continued operating classes in temporary locations and did not prominently refer to itself as a "school." *Id.* ¶ 85. Plaintiff's use of the name "PhillyWine School" did not begin until late 2024, when Plaintiff began an effort to rebrand its business using that terminology. *Id.* ¶¶ 48–49, 86. Plaintiff relocated to the Fitler Club, less than a quarter mile away from the Wine School. *Id.* ¶ 86. Plaintiff changed its online presence, including modifying its Instagram handle from @_phillywine_ to "@phillywineschool," and editing online biographies to refer to Plaintiff's principals as owners of "PhillyWine School." *Id.* ¶¶ 87, 88. Plaintiff also altered certain online listings and Google business profiles to reference "PhillyWine School," which created confusion with the longstanding Wine School's Philly Wine School. *Id.* ¶¶ 86–90.

Meanwhile, in late 2024, Wallace began the process of formally registering the mark "Philly Wine School" with the United States Patent and Trademark Office ("USPTO") in order to protect the goodwill associated with the name and to prevent the Plaintiff from causing further brand confusion. *Id.* ¶ 69. Wallace submitted evidence supporting the school's longstanding use of the phrase and responded to an Office Action issued by the Trademark Office. *Id.* ¶ 69. The representations made during the trademark application process reflected Wallace's good faith understanding of his school's historical use of the "Philly Wine School" name and the marketplace in which it operates. *Id.* ¶¶ 70–73.

Plaintiff seems to have deliberately adopted the "School" terminology and similar branding in order to trade on the reputation of the Wine School and to create confusion among consumers. *Id.* ¶¶ 86–89, 94. Plaintiff's rebranding campaign to the "PhillyWine School" also disregard the

5

fact that Neal Ewing's prior program had never used that term. *Id.* ¶¶ 41, 46, 87–89. Thus, after Plaintiff began publicly referring to itself as "PhillyWine School," Wallace took steps to address what he believed was misleading and confusing use of his mark. *Id.* ¶¶ 86–93.

That confusion has had tangible consequences for the Wine School. For example, its Core Sommelier program—one of its central offerings—was cancelled for the Winter 2026 term due to confusion in the marketplace regarding Plaintiff's competing program. *Id.* ¶ 95.

To protect its brand, Defendants took several actions which Plaintiff now claims caused it irreparable harm: first, Wallace sought to remove Plaintiff's misleading "PhillyWine School" terminology from its Google Business profile. *Id.* ¶ 90. Since then, Plaintiff changed its Google Business profile back to simply "PhillyWine," and Wallace never gained access. Second, Wallace reported Plaintiff's infringing use to Squarespace, the new PhillyWine's website host, to have it remove the references to "PhillyWine School" from Allen's online biography. *Id* ¶ 91. Square Space responded that as a neutral platform, it had no control over the content its users post to the internet, and the parties would have to resolve its dispute amongst themselves. Since then, I have taken no further action with respect to Square Space, and Allen's bio still states she is a co-owner of "PhillyWine School." *Id.*

Lastly, Plaintiff claims irreparable injury from the removal of its infringing @phillywineschool Instagram account. *Id.* ¶ 92. Instagram did remove the account, and since then PhillyWine created a new handle called @mywineschool. *Id.* Prior to filing its lawsuit, I twice offered to restore PhillyWine's Instagram account if they agreed to change their handle away from @phillywineschool. *Id.* ¶ 93. They refused. In hindsight, it appears PhillyWine LLC wanted to create the narrative that my actions have harmed them to fabricate litigation leverage that they have been "irreparably harmed." *Id.*

## III. ARGUMENT

Plaintiff's Motion should be denied for a host of reasons, chief among them, that it failed to establish a protected mark, let alone that the mark has been infringed upon. While Plaintiff runs into Court professing an emergency, its only possibly immediate and irreparable harm is loss of its Instagram account, something Defendants offered to return if Plaintiff simply change its handle.

A preliminary injunction is an "extraordinary remedy" that "should be granted only in limited circumstances." *Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014). An award of preliminary relief is only appropriate upon a "clear showing that the plaintiff is entitled to such relief." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014). When ruling on a request for a preliminary injunction, a district court must examine the following four factors: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm if relief is not granted; (3) the balance of equities; and (4) the public interest. *Id.* The moving party "must 'meet the threshold for the first two most critical factors,' and if 'these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief.'" *I.M. Wilson, Inc. v. Grichko*, No. 18-5194, 2019 WL 5394113, at *3 (E.D. Pa. Oct. 22, 2019) (quoting *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)) (cleaned up).

In the instant Motion, Plaintiff falls short of the clear showing required for the issuance of a preliminary injunction, failing to establish even one of the four factors. In particular, Plaintiff fails to establish a likelihood of success on the merits of its common law trademark infringement claims because Plaintiff's entire action is predicated upon a bait-and-switch between phillywine.com, which Plaintiff's purported predecessor used as its website URL, and Defendants' registered "Philly Wine School" mark, defining the marks interchangeably to suit its

purpose while providing scant evidence that it ever even used "Philly Wine School" until very recently.

Further, Plaintiff makes no showing of immediate and irreparable harm because any immediate harm complained of by Plaintiff could be mitigated simply by changing its Instagram handle. Likewise, because Plaintiff cannot establish its infringement claims, it is not entitled to a presumption of irreparable harm. Finally, Plaintiff does not prove the balance of equities or public interest weigh in its favor in large part because its claims lack merit, and if the Court were to grant Plaintiff relief, it would be on the basis of "PhillyWine," a geographically descriptive title unentitled to protection. Without a clear showing on any of the four necessary factors, Plaintiff's Motion must be denied.

**A. Plaintiff Cannot Show Likelihood of Success on the Merits Primarily Because It Fails to Establish That It Has a Protectable Mark.**

No doubt recognizing that it has a claim over nothing more than "PhillyWine," a mark so generic and geographically descriptive so as not to warrant intellectual property protection, Plaintiff attempts to attack Defendants' "Philly Wine School" mark by defining "PHILLYWINE," "PHILLYWINE.COM," and "the PHILLY WINE school" as the "PhillyWine Marks." From there, Plaintiff makes the fatal and unsupported assumption that all three marks can be used interchangeably, and that the use of one mark necessarily constitutes the use of the other two. Plaintiff's entire infringement claim—indeed, its entire injunction—is predicated on this flawed and self-serving assertion.

Plaintiff has no rights, common law or otherwise, to "Philly Wine School", which is Defendants registered mark, and it therefore cannot sustain a claim that Defendants infringed on its purported mark (whichever of the three it may be). Unsurprisingly, Plaintiff skates past necessary aspects of its claim, arguing as a foregone conclusion that it used the mark first and

continuously without saying to which variation of the mark it even refers. Further, Plaintiff completely ignores the relevant legal standard in attempting to rebut the presumption that Defendants, not Plaintiff, are the ones with the valid and enforceable mark.

In order to succeed on the merits, Plaintiff must show a clear right to relief that Defendants obtained their mark through fraud by clear and convincing evidence *and* show a clear right to relief that Plaintiff has a protectable mark that is being infringed upon by Defendants. Plaintiff cannot meet these heavy burdens.

### 1. Plaintiff Fails to Show Likelihood of Success on Trademark Infringement Claims.

Plaintiff cannot establish a likelihood of success on the merits of its claims. To succeed on its trademark infringement claims, Plaintiff must prove the following three elements: (1) the mark is valid and legally protectable; (2) it owns the mark; and (3) Defendants' use of the mark is likely to create confusion concerning the origin of the goods or services. *E.T. Browne Drug Co. v. Cococare Products, Inc.*, 538 F.3d 185, 191 (3d Cir. 2008). Plaintiff fails to establish any of these elements, much less all three elements together, as required to sustain a claim.

### a. Plaintiff Does Not Own a Valid and Legally Protectable Mark.

Plaintiff does not own a valid and legally protectable mark because it does not qualify for common law protection over its so-called "PhillyWine Marks." To establish common law protection over an unregistered mark, the claimant must show that (1) it was the first to adopt the mark in commerce, (2) it has continuously used the mark in commerce since its adoption, and (3) its mark is inherently distinctive or has acquired secondary meaning. *Douglas v. Osteen*, 307 F. App'x 97, 99 (3d Cir. 2009).

Plaintiff contends it has common law protection over three separate marks, "PHILLYWINE," "PHILLYWINE.COM," and "the PHILLY WINE school," which it lumps

together as the "PhillyWine Marks," asserting proof of the protectability of one mark as proof of the protectability of all three. However, Defendants have only registered and attempted to enforce its "Philly Wine School" mark, and Plaintiff's decision to discuss all three marks together and interchangeably as the "PhillyWine Marks" represents a strategic decision designed to bridge the legal and factual gaps with Plaintiff's claim over any single mark. Specifically, Plaintiff's use of "PhillyWine" and "PhillyWine.com" fails to satisfy the second and third elements (and any of the elements if it did not properly assume the intellectual property of Neal Ewing Wine Services). Plaintiff's supposed use of "Philly Wine school" fails to satisfy the first and third elements: Plaintiff was not the first to adopt the mark in commerce, and the mark has not acquired a secondary meaning as to Plaintiff.

<div align="center">

**i.**        **Plaintiff's Sporadic Use of "PhillyWine" and "PhillyWine.com"**

</div>

First, regarding "PhillyWine" and "PhillyWine.com," Plaintiff presents no credible evidence to support its assertion that it acquired the rights to Neal Ewing's use of "PhillyWine" and "PhillyWine.com" to claim first use of these marks in commerce. Plaintiff, PhillyWine LLC, was registered in 2022. *See* ECF No. 6-4 at ¶ 9. The entire basis of Plaintiff's argument that its rights to "PhillyWine" and "PhillyWine.com" are based on its unsupported assertion that Ewing transferred and assigned all rights from Neal Ewing Wine Services to Plaintiff. *Id.* ¶ 11. But Plaintiff attaches no documentation to support this supposed assignment of rights, merely swearing to it in declarations and asking Defendants and the Court to take its word for it. *See Gaydos v. Gaydos*, 693 A.2d 1368, 1372 (Pa. Super. Ct. 1997) (discussing the difference between professional goodwill held by a sole proprietor (incapable of being transferred) and the enterprise goodwill held by the business (capable of being transferred)). Without acquiring Ewing's rights to

<div align="center">

10

</div>

"PhillyWine" and "PhillyWine.com," Plaintiff's argument that it is entitled to protection over these marks is a non-starter.

But even taking Plaintiff's word that it acquired the rights to "PhillyWine" and "PhillyWine.com" from Ewing, Plaintiff has not continuously used these marks in commerce. Under 15 U.S.C. § 1127, "[t]he term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." When the mark is for services, it is considered to be in use in commerce "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce[.]" 15 U.S.C. § 1127. Critically, mere "sporadic, casual, or transitory" use of a mark fails to satisfy the "continuous use" standard. *Warren Pub. Co. v. Spurlock*, 645 F. Supp. 2d 402, 435 (E.D. Pa. 2009).

In this case, while there is evidence that Neal Ewing periodically began using the phillywine.com domain in 2001, Ewing primarily used "Neal Ewing Wine Services" to advertise his wine-related programming. *See* Ewing Decl. ¶ 3; *see also Trademark Process*, USPTO (last accessed Mar. 9, 2026), https://www.uspto.gov/trademarks/basics/trademark-process ("Registering a domain name with a domain name registrant doesn't give you any trademark rights."). Indeed, Ewing himself acknowledges in his declaration that "the school functioned under a variety of names." *See* Ewing Decl. ¶ 3. This is consistent with the WSET Annual Yearbooks which, even after Ewing's retirement, continued to refer to "Neal Ewing Wine Services" as a Philadelphia program provider, sometimes without mentioning "PhillyWine" at all. *See* Wallace Decl. ¶ 45, Ex. "G" (identifying the 2022 and 2023 WSET graduates from "Neal Ewing Wine Services").

Plaintiff did not begin to consistently refer to itself as "PhillyWine" until 2022, when Ewing allegedly transferred and assigned his rights in Neal Ewing Wine Services to Allen and

Kirkland.[1] This is apparent through Internet archives showcasing the changes made to PhillyWine.com over the years. For example, from at least 2002 until 2008, PhillyWine.com identified itself as "the webpage for Neal Ewing Wine Services." *See* Wallace Decl. ¶ 47, Ex. "E." From 2008 until 2022, PhillyWine.com prominently noted on its homepage that it had been providing services "as Neal Ewing Wine Services" since 1988. *Id.* ¶ 48, Ex. "F". Even after Allen and Kirkland took control of the PhillyWine.com domain in 2022, the website continued to identify itself as "formerly Neal Ewing Wine Services" until the end of 2024. *Id.*, Ex. "I." If consumers had recognized the Plaintiff as PhillyWine at that point, there is simply no reason why it needed to disclaim that it is the former entity of Neal Ewing.

Thus, while Plaintiff claims occasional use of "PhillyWine" and "PhillyWine.com" since 2001, its use of these marks falls far below the threshold for "continuous use." *See Warren Pub. Co.*, 645 F. Supp. 2d at 435 (finding the defendant's sporadic use of the trademark did not qualify as "the type of 'bona fide use' the statue requires"); *see also EAT BBQ LLC v. Walters*, 47 F. Supp. 3d 521, 529 (E.D. Ky. 2014) (concluding the restaurant defendant did not possess common-law rights in the trademark because its use of the mark was sporadic where it used the mark on its menus, Facebook page, and in its email address).

Second, even assuming *arguendo* that Plaintiff had continuously used "PhillyWine" and "PhillyWine.com" in commerce, these marks are neither inherently distinctive nor have they acquired secondary meaning to qualify for common law protection. As Plaintiff notes, the USPTO initially rejected Defendants' application for registration of the "Philly Wine School" mark on the grounds that it was primarily geographically descriptive. *See* ECF No. 1-14 at 3. It was only after Defendants submitted evidence that "Philly Wine School" had acquired distinctiveness through

---

[1] As discussed *infra*, Plaintiff's regular use of "PhillyWine" in 2022 occurred long after Defendants began to use the "Philly Wine School" mark.

their exclusive and continuous use of the mark that the USPTO issued the registration certificate. *See generally* ECF Nos. 1-15, 1-17. Because "Philly Wine School" is inherently more descriptive than "PhillyWine" or "PhillyWine.com," it thus stands to reason that "PhillyWine" and "PhillyWine.com" on their face would be insufficient to warrant protection.

Similarly, "PhillyWine" and "PhillyWine.com" have not acquired secondary meaning. Secondary meaning is acquired "when the mark is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services." *Com. Nat'l Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (internal quotations omitted). As an initial matter, and despite its approximately 1,100-page filing, Plaintiff submits very little evidence to support the notion that it has established a secondary meaning for any one of its marks, choosing instead to cite its conclusory assertion that Plaintiff has used these "marks" for 27 years. ECF No. 6-2 at 10-11. However, this evidence holds little probative value of how the Plaintiff's entity was actually identified by consumers.

When determining whether a mark has acquired secondary meaning, courts consider eleven non-exclusive factors: (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion. *See Ford Motor Co. v. Summit Motor Prods., Inc.* 930 F.2d 277, 292 (3d Cir. 1991). An examination of these factors reveals the lack of secondary meaning attributable to Plaintiff's use of "PhillyWine" and "PhillyWine.com."

Regarding the first, fifth, ninth, and tenth factors, Plaintiff fails to carry its burden because it provides virtually no evidence pertaining to these factors in relation to any of the purported marks. *See* ECF No. 6-2 at 10. Regarding the second factor, Defendants have already established that Plaintiff's use of "PhillyWine" and "PhillyWine.com" was sporadic. And regarding the fourth

13

factor, Defendants did not copy Plaintiff's use of "PhillyWine.com" and could not have copied Plaintiff's use of "PhillyWine" because, as noted *infra*, it is a geographically descriptive term used by many entities in the Philadelphia area.

Regarding the third and seventh factors, Plaintiff cannot with a straight face claim exclusive use over the joinder of "Philly" and "Wine." Indeed, Defendants have been using the Instagram handle @phillywine in reference to their own wine school since 2016. *See* Wallace Decl. ¶ 68. Additionally, "Philly Wine" is frequently used by third parties in reference to various companies, wine events, and persons in the Philadelphia wine community. For example:

- **PhillyWineFest** is a registered trademark (No. 6897423) for Craft Hospitality LLC, organizers of a local festival held regularly at the Philadelphia Zoo;

- **Philly Wine and Beer** is a local bottle shop located at 4173 Germantown Ave., Philadelphia, PA;

- **Philly Wine Week LLC** (**a/k/a Philly Wine Cru**) offers wine-related events and educational programming;

- **Philly Wine Week** is an event organized through Visit Philadelphia to celebrate and promote the City's diverse wine culture;

- **"Philly Wine Guy"** and **www.phillywineguy.com** are the tradename and website of Bob Trimble who also teaches WSET classes around the City. Mr. Trimble is a declarant for Plaintiff in this lawsuit, but in his declaration, claims to operate by a different name. *See* Ex. N;

- **@ThePhillyWineGuy** is the Instagram handle of a separate third party unrelated to Mr. Trimble. *See* https://www.instagram.com/ThePhillyWineGuy;

- **@Philly_WineGuys** is the Instagram handle of two more third parties who describe themselves as "[t]wo Philly guys selling Italian Wines." *See* https://www.instagram.com/Philly_WineGuys;

- **@PhillyWineEvents** is the Instagram handle of a third party, who identifies itself as a local business and "Master of Craft Cocktails and Wine Events." *See* https://www.instagram.com/PhillyWineEvents;

- **@PhillyWineClub** is the Instagram handle of yet another third party, who identifies itself as an "informal wine education group learning about wine by drinking it together." *See* https://www.instagram.com/PhillyWineClub.

14

- In the article titled *The Wines of the Summer, According to Philly Wine Pros*, Philadelphia Magazine uses the phrase "Philly Wine" to refer to wine professionals in Philadelphia.

*See* Wallace Decl. ¶ 72(c). As evidenced by the above, Plaintiff's use of "Philly Wine" is far from exclusive.

Next, regarding the sixth factor, the customer testimony cited by Plaintiff purporting to show that a substantial segment or appreciable number of the relevant group of consumers associates "Philly Wine" with Plaintiff is misleading. Plaintiff merely points to declarations sworn by its friends rather than testimony of third-party consumers of wine education. *See* Wallace Decl. ¶¶ 36, 51. Indeed, the declaration sworn by Bob Trimble stating that he "exclusively" associates the name "PhillyWine" with Plaintiff neglects to mention that his own trade name and domain, "Philly Wine Guy" and phillywineguy.com, respectively, also use "Philly Wine" despite Mr. Trimble's business having no association to Plaintiff. *See id.* ¶ 65, Ex. "N".

In sum, because Plaintiff has not continuously used "PhillyWine" and "PhillyWine.com" in commerce and because its use of "PhillyWine" and "PhillyWine.com" are not inherently distinctive nor have they acquired secondary meaning, Plaintiff is not entitled to common law protection over these marks.

### ii. Plaintiff's Use of "Philly Wine school"

Plaintiff cannot maintain common law protection over "Philly Wine school"—a conclusion made abundantly clear once its arguments regarding the collective "PhillyWine Marks" are isolated to those only concerning "Philly Wine school." Throughout Plaintiff's 5-page argument contending it has acquired common law protection over all three marks, Plaintiff's argument only mentions its supposed use of "Philly Wine school" in two brief instances: once in arguing that Plaintiff was the first to use the "Philly Wine school" mark in commerce (it wasn't),

and once when arguing that "Philly Wine school" has acquired secondary meaning as to Plaintiff (it hasn't).

First, Plaintiff argues that it was the first to use "Philly Wine school" in commerce, citing Ewing's declaration. But all the declaration says is that PhillyWine.com has hosted "general information about the PhillyWine school" since 2001. *See* ECF No. 6-3 at ¶ 7. This does not in any way show the use of "Philly Wine school" in trade. Further, as noted, from 2002 until the end of 2024, PhillyWine.com proclaimed its association with Neal Ewing Wine Services. *See* Wallace Decl. ¶¶ 47-48. At no point prior to 2024 did PhillyWine.com ever claim to provide information about a "Philly Wine school." *See id.* ¶ 48. Moreover, Plaintiff did not change its Instagram handle, which was originally @_phillywine_, to @phillywineschool until 2025. *See id.* ¶ 84, Ex. "Q". In contrast, there is documentary evidence of Defendants' use of "Philly Wine School" dating back to 2005. *See id.* ¶ 22, Ex. "B" (third party referring to the Wine School as "Philly Wine School" in a 2005 news article); *see also id.* ¶ 67, Ex. "O" (third party referencing a whiskey class he attended "at The Philly Wine School" in a 2017 article).

Second, in arguing that "Philly Wine school" has acquired secondary meaning, Plaintiff cites only to one student's confusion regarding an advertisement for Defendants' "Core Sommelier Court (Winter Semester) Philly Wine School Philadelphia, Pennsylvania." This confusion occurred in 2025. *See* ECF No. 6-4 at 34. But just because one student mistakenly confuses Plaintiff's program with Defendants' does not support Plaintiff's position. Instead, this simply highlights the confusion that occurred when Plaintiff took over Neal Ewing Wine Services and rebranded itself as something Defendants had been calling themselves for years.

In the absence of any credible evidence of Plaintiff using "Philly Wine School" until the very recent, Defendants' use of its registered "Philly Wine School" mark is lawful and cannot infringe upon a mark held by Plaintiff. Plaintiff cannot establish a likelihood of success on the

merits of its trademark infringement claims and, for that reason alone, its Motion for Preliminary Injunction should be denied.

> **b.** **Defendants' Use of "Philly Wine School" Mark is Not Likely to Cause Confusion.**

Defendants' use of "Philly Wine School," a mark it has been using to identify itself in commerce since at least 2005, is not likely to cause confusion. Rather, it is Plaintiff's use of "Philly Wine school" that created the issue. Accordingly, Plaintiff cannot win this prong simply because it created the issue. Instead, it must establish the prior elements of common law infringement *and* show that the confusion was caused by the acts of the Defendants.

In assessing the likelihood of confusion, courts look to the ten factors enumerated in *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983): (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers because of the similarity of function; (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market. *See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 215 (3d Cir. 2000). The Third Circuit has stressed that the *Lapp* test is qualitative—"[n]ot all factors will be relevant in all cases; further, the different factors may properly be accorded different weights depending on the particular factual setting." *Id.*

17

Here, a majority of the *Lapp* factors weigh against a finding of likelihood of confusion. First, there is no similarity between the marks because, for the reasons stated above, Plaintiff does not have rights over any mark, much less over the "Philly Wine School" mark. Second, because "Philly Wine School" is not inherently distinctive and has not acquired a secondary meaning as to Plaintiff for the reasons stated *supra*, the second *Lapp* factor weighs against a finding of likelihood of confusion.

Third, because Plaintiff's core consumers are wine trade professionals while Defendants' core consumers include causal consumers and non-trade professionals, the sophistication of Plaintiff's consumers weighs against a finding of a likelihood of confusion. *See Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 715 (3d Cir. 2004) ("The third *Lapp* factor weighs against finding a likelihood of confusion '[w]hen consumers exercise heightened care in evaluating the relevant products before making purchasing decisions.'"); *Primepoint, LLC v. Primepay, Inc.*, No. 06–1551, 2009 WL 1884369, at *9 (D.N.J. June 30, 2009) ("Where the parties' consumers are sophisticated and the purchase process requires close analysis by the buyer, confusion is often unlikely."). Throughout its brief, Plaintiff belabored the difference between it and Defendants. Namely, Plaintiff offers WSET courses to sophisticated consumers looking to obtain their WSET certification. *See* ECF No. 6-2 at 4-5. In contrast, Defendants offer classes to the more causal consumer looking to learn a little more about wine. *See* Wallace Decl. ¶¶ 12-17, 21, 34; *see also* ECF No. 1-11 (Philly Wine Article highlighting the differences between the parties' programs). Critically, and as repeatedly mentioned by Plaintiff, Defendants do not offer WSET courses. As such, it is highly unlikely that the sophisticated consumers attending Plaintiff's WSET certification would confuse Plaintiff with Defendants, which do not and never have offered such certification. Accordingly, Plaintiff's sophisticated consumer class weighs against finding a likelihood of confusion.

Further, Defendants have operated a brick-and-mortar location for nearly twenty years, whereas Plaintiff has operated at its location for a few years. *See* Wallace Decl. ¶ 43; ECF No. 1-5 (PhillyMag Article noting Defendants' permanent address while stating that Neal Ewing had a PO Box address and offered courses at varying locations around the City). While Plaintiff could have chosen to open anywhere in the City, it opened a location within blocks of the Wine School. Any confusion on the third factor did not originate because of the actions of Defendants.

Regarding the fourth and sixth *Lapp* factors, Defendants have been using "Philly Wine School" alongside Neal Ewing's use of PhillyWine.com without confusion for nearly two decades, largely because Plaintiff's predecessor almost exclusively called itself "Neal Ewing Wine Services." *See* Wallace Decl. ¶¶ 44-48. It was not until 2022, when PhillyWine LLC purportedly assumed control over Neal Ewing Wine Services and phillywine.com that confusion arose. *See id.* ¶ 48. But even then, Defendants' use of "Philly Wine School" in conjunction with Plaintiff's use of "PhillyWine" did not cause confusion. *See id.* ¶ 72. It was not until 2025, immediately after Plaintiff started using "PhillyWine School," that the instances of confusion cited by Plaintiff began to occur. *See* ECF No. 6-4 at 34 (email dated December 2, 2025); *id.* at 36 (screenshot of Google review posted in approximately February 2026). Thus, the fourth and sixth *Lapp* factors weigh against a finding of likelihood of confusion.

Finally the fifth *Lapp* factor also weighs against a finding of likelihood of confusion. As discussed, Plaintiff does not own the "Philly Wine School" mark and did not use the mark until the end of 2024, after Defendants applied for trademark registration. *See* Wallace Decl. ¶¶ 69, 83-86. Accordingly, Defendants could not have intended to infringe on Plaintiff's mark because Plaintiff did not, and does not, have rights to the "Philly Wine School" mark.

**2. Defendants Are Entitled to a Presumption of Validity Because They Have a Registered Mark and Plaintiff Has Not Carried Its Heavy Burden of Proof to Invalidate That Mark.**

As noted above, Plaintiff cannot sustain a claim for common law trademark infringement. However, before even making that argument, Plaintiff first must show by clear and convincing evidence that Defendants' "Philly Wine School" mark is invalid. While Plaintiff makes significant attempts to sling mud on Defendants, it cannot carry that burden.

Under the Lanham Act, 15 U.S.C. § 1115(a), federal registration of a trademark is *prima facie* evidence "of the mark's validity, the registrant's ownership of the mark, and its exclusive right to use the mark in commerce." *Lucent Info. Mgmt., Inc., v. Lucent Tech., Inc.*, 186 F.3d 311, 315 (3d Cir. 1999). "[I]f a plaintiff owns a registered mark, then it is entitled to a strong prima facie presumption that its registered mark is distinctive or it is descriptive and 'secondary meaning is presumed.'" *All. Bank v. New Century Bank*, 742 F. Supp. 2d 532, 548–49 (E.D. Pa. 2010) (citations omitted).

Plaintiff attempts to invalidate Defendants' registered mark by claiming that fraud occurred in the registration process, but in doing so, fails to cite the appropriate legal standard. To invalidate a trademark on the basis of fraud, Plaintiff must prove that: (1) Defendants made a false representation regarding a material fact, (2) Defendants knew the representation was false when made, (3) Defendants intended to induce the USPTO to act in reliance on the misrepresentation, (4) actual, reasonable reliance on the misrepresentation by the USPTO, and (5) proximately resulting damages. *Pac-W. Distrib. NV LLC v. AFAB Indus. Servs., Inc., 674 F. Supp. 3d 132, 142 (E.D. Pa. 2023)*. There is a "heavy burden of proof" on Plaintiff to establish these factors and each factor must be established "to the hilt," through clear and convincing evidence. *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). Moreover, in establishing these factors, "[t]here is no room

for speculation, inference or surmise" and "any doubt must be resolved against the charging party." *Id.* (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (T.T.A.B. 1981)).

Plaintiff first claims that Wallace made broad misrepresentations in his application to the USPTO by claiming that (1) the Philly Wine School Mark was first used in commerce as of August 15, 2016; (2) Wallace had used the Philly Wine School mark substantially exclusively and continuously for at least the past five years; (3) Wallace had "nearly two decades of continuous use" of the mark; and (4) to Wallace's knowledge, no one else had the right to use the PHILLY WINE SCHOOL mark in "identical form or in such near resemblance as to be likely, when used on or in connection with the services of such other persons, to cause confusion or mistake." However, as noted above, Plaintiff's entire argument is predicated on the false notion that "Philly Wine School" and "Philly Wine" can be used interchangeably. However, because it is undisputed that Defendants, not Plaintiff, owns the registered trademark, Plaintiff must rebut this strong *prima facie* presumption.

As set forth in his declaration, Wallace has used Philly Wine School since no later than 2005. Wallace Dec. at ¶ 72(c) (citing a third-party article referring to the Defendant entities as the "Philly Wine School"). Further, and as noted above, Plaintiff's use of "Philly Wine School," the actual mark at issue, was virtually nonexistent until the very recent past. However, Defendants have identified nearly a dozen different instances of non-parties to this litigation using Philly and Wine together in commerce. *Id.* at ¶ 72(a). Accordingly, none of Wallace's broad statements regarding the Philly Wine School mark were false. *Id.* at ¶¶ 70-73.

Plaintiff next points to three particular documents in Wallace's nearly 100-page submission that it contends invalidates Defendants' mark: an instructor bio that purportedly used "Philly Wine School" to refer to Plaintiff's institution, a reddit post seeking advice about WSET classes, which Plaintiff contends could only mean its school, and articles from SOMM.us, which the Plaintiff

21

contends were authored by Wallace himself. As Wallace explains in his declaration, he honestly thought that the instructor, who was a former student of his, was referring to the Wine School and not Plaintiff in her biography. This is because former students have sometimes embellished their resumes with Wine School credentials in the past and because Plaintiff only recently started referring to itself as "PhillyWine School." In light of this, Wallace had no reason to think that the instructor was not referring to his school. *Id.* ¶¶ 74-75. The same is true with the reddit post. While the poster is referring to WSET, Ewing historically had no social media presence, and it is not at all unusual for students to reach out to Wallace about WSET courses. Because, to Wallace's knowledge, only Defendants used Philly Wine School at the time the post was made, therefore he had no reason to believe that the poster was talking about Plaintiff. *Id.* ¶ 76. Finally, while Wallace does author pieces and serve as an administrator for SOMM.us, all of the articles regarding "Philly Wine School" were authored by third parties. *Id.* ¶¶ 80-82. At any rate, Plaintiff's theory that SOMM.us posts were fraudulent makes little sense because the reviews were largely positive, and if Defendants' thought that "Philly Wine School" referred to the Plaintiff's school, then that praise would be misattributed to Plaintiff.

Furthermore, even if the Court were to find that a small number of the attachments to the USPTO were inaccurate, Plaintiff still has the burden of showing the inaccuracies were material to the USPTO's determination. To that end, a representation is material if it would affect the validity of the application or any resulting registration. *Industria De Alimentos Zenu S.A.S. v. Latinfood U.S. Corp.*, 679 F. Supp. 3d 53 (D.N.J. 2023). "[C]ourts do not consider 'isolated statement[s]' when determining if a false representation has been made, and instead look to 'the full context of the document.'" *Pac-West Distributing*, 674 F. Supp. 3d at 144 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "This is particularly important where, the statement was made in response to a specific request from the USPTO." *Pac-*

*West Distributing*, 674 F. Supp. 3d at 144 (citing *Anhing Corp. v. Thuan Phong Co.*, 215 F. Supp. 3d 919, 936 (C.D. Cal. 2015) (explaining that it is necessary to examine what the USPTO's requested of an application to determine whether a statement or omission was false)).

To that end, merely showing that one or two exhibits in an entire package to the USPTO contain inaccuracies, particularly when the inaccuracy was one of many representative examples, is not sufficient to show that the inaccuracies were material to the USPTO's determination. Given that Plaintiff does not even attempt to show the other four elements (and that the Wallace declaration explains his subjective intent), Plaintiff has not met its burden to invalidate Defendants' mark. This by itself is sufficient to deny Plaintiff's injunction.

### B. Defendants Did Not Knowingly Make False Representations Regarding Plaintiff, and Plaintiff Will Not Suffer Irreparable Harm Absent the Injunction.

Plaintiff will not be irreparably harmed absent the issuance of an injunction and is not entitled to a presumption of irreparable harm. To show irreparable harm, the moving party must demonstrate "potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from harm." *Checker Cab of Phila. Inc. v. Uber Tech.*, Inc., 643 F. App'x 229, 232 (3d Cir. 2016) (emphasis in original).

Here, because the harm cited by Plaintiff is either speculative or has been largely manufactured by Plaintiff, Plaintiff will suffer no irreparable harm absent the injunction. Plaintiff argues it has suffered irreparable harm through Defendants' enforcement of the "Philly Wine School" trademark through the following actions: (1) Defendants' complaint to Instagram that resulted in Plaintiff's Instagram account being suspended, (2) Defendants' takedown notice submitted to Squarespace, the host of Plaintiff's website, and (3) Defendants' attempt at taking over Plaintiff's Google Business Profile. *See* ECF No. 6-2 at 19.

However, two of the three instances of Defendants' trademark enforcement, as alleged by the Plaintiff, amounted to *attempts* at enforcement and did not result in actual harm to Plaintiff that requires abatement: Squarespace did not take down Plaintiff's website and Google did not permit Defendants to remove Plaintiff's Google Business Profile. *See* Wallace Decl. ¶ 91; ECF No. 6-4 at 124, 134. And any harm caused by the third instance of Defendants' trademark enforcement, namely their complaint to Instagram, can be largely attributed to Plaintiff. In an effort to resolve the instant dispute prior to Plaintiff filing the Complaint, Defendants offered to withdraw their Instagram complaint, which would have restored Plaintiff's Instagram account. *See* Wallace Decl. ¶ 93. Plaintiff refused to accept Defendants' offer, which now appears to be a deliberate move intended to manufacture irreparable harm in preparation for Plaintiff's filing the instant motion. But Plaintiff cannot refuse Defendants' offer to take the exact same affirmative action it now seeks from the Court for in an attempt to manufacture irreparable harm. *See Murthy v. Missouri*, 603 U.S. 43, 73 (2024) (holding that plaintiffs seeking preliminary injunctions "cannot manufacture standing merely by inflicting harm on themselves"); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) ("Because defendants have acted to permit the outcome which they find unacceptable, we must conclude that such an outcome is not an irreparable injury.").

In addition, Plaintiff is not entitled to a presumption of irreparable harm. While the Trademark Modernization Act (the "Act") did create a rebuttable presumption of irreparable harm, this presumption only applies if Plaintiff has demonstrated a likelihood of success on the merits. *See* 15 U.S.C. § 1116(a). And if such a presumption is applicable, Defendants need only make a "slight evidentiary showing" that is "sufficient for a reasonable factfinder to conclude that the consumer confusion is unlikely to cause irreparable harm." *Nichino Am. Inc. v. Valent U.S.A. LLC*, 44 F.4th 180, 186 (3d Cir. 2022).

As an initial matter, and for the reasons stated *supra*, Plaintiff has not demonstrated a likelihood of success on the merits of its trademark infringement claims. In short, Plaintiff has no mark on which Defendants' use of "Philly Wine School" could infringe. Plaintiff hardly proffers any evidence at all that its consumers had been tricked in any way (likely because Plaintiff, not Defendants, is the one trying to steal the other's clientele), focusing instead on the fact that the Defendants' acts in taking down its marketing materials were wrongful. This is fatal to Plaintiff's presumption of irreparable harm.

Further, even assuming *arguendo* that Plaintiff had demonstrated a likelihood of success on the merits, Plaintiff's arguments about its own consumer class is enough for Defendants to rebut any presumption of irreparable harm. As noted repeatedly by the Plaintiff, Defendants target causal consumers merely looking to learn a little more about wine, while Plaintiff targets sophisticated consumers looking to obtain WSET certifications. *See* Wallace Decl. ¶¶ 12-17, 21, 34; *see also* ECF No. 6-2 at 4-5. Further, Defendants do not and have never offered WSET classes, so anyone looking to take those classes could not possibly be duped in attending the Wine School. Indeed, over the last two decades during which Defendants have coexisted with Neal Ewing, Plaintiff's consumers have not been confused by the use of "PhillyWine.com" and Defendants' simultaneous use of "Philly Wine School." Defendants have met the "light burden of production" required to cause any presumption of irreparable harm to "disappear[] like a bursting bubble." *Nichino Am. Inc.* 44 F.4th at 186.

### C.    Balance of Equities Tips in Defendants' Favor.

Next, the balance of equities tips towards denying the preliminary injunction. When assessing the balance of equities, courts look "to ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner." *Opticians Ass'n of Am. v. Independent Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990).

Here, greater harm would befall Defendants because, as noted above, Plaintiff simply does not have protection over its asserted mark, which is merely a geographically descriptive term. The lack of merit to the Plaintiff's claim ends the analysis. However, even assuming *arguendo* that Plaintiff did have some merit to its claim, the only harm that it has faced to date which arguably requires equitable relief is that it has lost access to its Instagram account. Conversely, in its injunction, Plaintiff seeks to, among other things, prevent Defendants from (1) using a "confusingly similar mark" to the "Philly Wine School Mark"; (2) making any statements that would "mislead or confuse" customers into believing there is any relationship between the parties or that falsely disparages Plaintiff or its business; and (3) operating, controlling, or maintaining any website or social media account that uses the Philly Wine School Mark. The scope of these prohibitions are nearly impossible to define given the facts of this case.

It is firmly established that any injunction must be narrowly tailored and "cannot be broader than necessary to restrain the unlawful conduct." *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 545 (3d Cir. 1986) (citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 924 & n. 67 (1982)). Relatedly, "[s]ince an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 388 (3d Cir. 2021) (internal quotations omitted). Because Plaintiff defines three separate marks as one, all of which require secondary meaning for protection, it is not defined what "confusingly similar mark" would run afoul of the Plaintiff's proposed order. Notably, if Plaintiff prevails on its injunction and carries on as the Philly Wine School, it is entirely unclear whether Defendants could continue to go by their long-established business name of the "Wine School of Philadelphia," which itself could be considered "confusingly similar" of whatever mark Plaintiff claims to have. Accordingly, Defendants would be harmed far more by the issuance of an injunction than Plaintiff would be by its denial.

**D.** **Public Interest Weighs Highly in Favor of Denying the Injunction.**

Finally, the public interest also weighs in favor of denying the preliminary injunction. In a trademark case, the public interest most often lies in the right of the public not to be confused. *Opticians Ass'n of Am.*, 920 F.2d at 197. And as shown *supra*, the public has managed to avoid confusion over Defendants' use of "Philly Wine School" for over two decades. In light of this lack of confusion, as well as Plaintiff's total failure to demonstrate a likelihood of success on the merits or irreparable harm, the public interest weighs against granting the preliminary injunction.

Additionally, granting Plaintiff intellectual property rights over something as generic and geographically descriptive as "Philly Wine" could have far reaching consequences that go beyond this case. This is precisely why the Lanham Act, "provides no protection for generic terms because a first-user of a term cannot deprive competing manufacturers of the product of the right to call an article by its name." *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008); *see also* Wallace Decl. ¶ 72(c) (noting nearly a dozen other entities that use "Philly" and "Wine" in conjunction). This is particularly harmful where, as here, Plaintiff attempts to blend three different marks and discuss them interchangeably. Allowing trademark protection in those circumstances would expand the existing doctrine, limit competition, and create new monopolies that are not warranted by law. Public policy favors the denial of this injunction.

## IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court deny Plaintiff's

Motion for Preliminary Injunction.

Dated: March 16, 2026              By:      */s/ David A. Rodkey*
                                            Christopher C. Nana-Sinkam (ID No. 320189)
                                            David A. Rodkey (ID No. 325698)
                                            Stanford B. Ponson (ID No. 322548)
                                            Samantha A. Gill (ID No. 335915)
                                            **DILWORTH PAXSON LLP**
                                            1650 Market Street, Suite 1200
                                            Philadelphia, PA 19103
                                            (215) 575-7000
                                            drodkey@dilworthlaw.com
                                            cns@dilworthlaw.com
                                            sponson@dilworthlaw.com
                                            sgill@dilworthlaw.com
                                            *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on March 16, 2026, pursuant to the Federal Rules of Civil Procedure, the foregoing was served through the Court's CM/ECF System.

*/s/ David A. Rodkey*

# <u>CERTIFICATION</u>

The undersigned counsel certifies that pursuant to Local Civil Rule 7.1 and this Court's Policies and Procedures concerning the Length of Briefs, they have used double-spaced and proportionally spaced 12-point font with at least one inch margins and certifies that the total number of words in the brief, inclusive of point headings and footnotes, and exclusive of the caption, table of contents, table of authorities, and signature block, is 8,748 words, according to the word count provided by Microsoft Word processing software.

DATED: March 16, 2026

<div align="center" style="float:right">

_/s/ David A. Rodkey_____

Christopher C. Nana-Sinkam, Esq.
David A. Rodkey, Esq.
Stanford B. Ponson, Esq.
Samantha A. Gill, Esq.
**DILWORTH PAXSON LLP**
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7000
drodkey@dilworthlaw.com
cns@dilworthlaw.com
sponson@dilworthlaw.com
sgill@dilworthlaw.com
*Attorneys for Defendants*

</div>