# EXHIBIT 1

| | |
|---|---|
| **To:** | KSWCO LLC(keith@vinology.com) |
| **Subject:** | U.S. Trademark Application Serial No. 98869526 - PHILLY WINE SCHOOL |
| **Sent:** | July 28, 2025 03:38:43 PM EDT |
| **Sent As:** | tmng.notices@uspto.gov |

**Attachments**

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 98869526

**Mark:** PHILLY WINE SCHOOL

**Correspondence Address:**
KSWCO LLC
109 S 22nd St
Philadelphia PA 19103
United States

**Applicant:** KSWCO LLC

**Reference/Docket No.** N/A

**Correspondence Email Address:** keith@vinology.com

# NONFINAL OFFICE ACTION

**Response deadline.** File a response to this nonfinal Office action within three months of the "Issue date" below to avoid abandonment of the application. Review the Office action and respond using one of the links to the appropriate electronic forms in the "How to respond" section below.

**Request an extension.** For a fee, applicant may request one three-month extension of the response deadline prior to filing a response. The request must be filed within three months of the "Issue date" below. If the extension request is granted, the USPTO must receive applicant's response to this letter within six months of the "Issue date" to avoid abandonment of the application.

**Issue date:** July 28, 2025

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

SUMMARY OF ISSUES:

- Section 2(e)(2) Refusal - Primarily Geographically Descriptive
- Supplemental Register Advisory

SEARCH RESULTS – NO CONFLICTING MARKS FOUND

The trademark examining attorney has searched the USPTO database of registered and pending marks and has found no conflicting marks that would bar registration under Trademark Act Section 2(d). 15 U.S.C. §1052(d); TMEP §704.02.

## SECTION 2(e)(2) REFUSAL – PRIMARILY GEOGRAPHICALLY DESCRIPTIVE

Registration is refused because the applied-for mark is primarily geographically descriptive of the origin of applicant's goods and/or services. Trademark Act Section 2(e)(2), 15 U.S.C. §1052(e)(2); *see* TMEP §§1210, 1210.01(a).

A goods-place or services-place association may be presumed where (1) the location in the mark is generally known to the purchasing public, (2) the term's geographical significance is its primary significance, and (3) the goods and/or services do, in fact, originate from the named location in the mark. TMEP §1210.04; *see, e.g.*, *In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704, 1705 (TTAB 1988) (finding a services-place association was presumed between applicant's restaurant services and California because the services originated in California); *In re Handler Fenton Ws., Inc.*, 214 USPQ 848, 850 (TTAB 1982) (finding a goods-place association was presumed between applicant's t-shirts and Denver because the goods had their geographical origin in Denver); *see also In re Nantucket, Inc.*, 677 F.2d 95, 102, 213 USPQ 889, 895 (C.C.P.A. 1982) (Nies, J., concurring) ("[W]e must start with the concept that a geographic name of a place of business is a descriptive term when used on the goods of that business. There is a public goods/place association, in effect, presumed." (internal footnote removed)).

A mark is primarily geographically descriptive when the following is demonstrated:

> (1)    The primary significance of the mark to the purchasing public is a generally known location;

> (2)    The goods or services originate in the place identified in the mark; and

> (3)    The purchasing public would be likely to believe that the goods or services originate in the geographic place identified in the mark; that is, to make a goods-place or services-place association.

*See Spiritline Cruises LLC v. Tour Mgmt. Servs., Inc.*, 2020 USPQ2d 48324, at *5 (TTAB 2020) (citing *In re Nantucket, Inc.*, 677 F.2d 95, 96-97, 213 USPQ 889, 891 (C.C.P.A. 1982)); *see also In re Newbridge Cutlery Co.*, 776 F.3d 854, 860-61, 113 USPQ2d 1445, 1448-49 (Fed. Cir. 2015); *In re Societe Generale des Eaux Minerales de Vittel S.A.*, 824 F.2d 957, 959, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987); *In re JT Tobacconists*, 59 USPQ2d 1080, 1081 (TTAB 2001)); TMEP §1210.01(a).

The primary significance of "PHILLY" is a geographic location, namely, Philadelphia, a city in Pennsylvania, United States. *See* attached Gazetteer evidence.

While the applied-for mark does contain the additional wording of "WINE SCHOOL" this does not

remove the geographic significance as the addition of generic or highly descriptive twording to a geographic word or term does not diminish that geographic word or term's primary geographic significance. TMEP §1210.02(c)(ii); *see, e.g.*, *Spiritline Cruises LLC v. Tour Mgmt. Servs., Inc.*, 2020 USPQ2d 48324, at \*6-7 (TTAB 2020) (holding CHARLESTON HARBOR TOURS primarily geographically descriptive of various travel tour and cruise services because TOURS is generic for the services and CHARLESTON HARBOR is a well-known harbor in Charleston, South Carolina); *In re Hollywood Lawyers Online*, 110 USPQ2d 1852, 1853-54 (TTAB 2014) (holding HOLLYWOOD LAWYERS ONLINE primarily geographically descriptive of attorney referrals, online business information, and an online business directory). Applicant's attached specimen shows that applicant is providing educational services for wine.

For services to originate in a geographic place, the record must show that they are rendered at least in part in the geographic place. *See In re Chalk's Int'l Airline Inc.*, 21 USPQ2d 1637 (TTAB 1991) (holding PARADISE ISLAND AIRLINES primarily geographically descriptive of air transportation services of passengers and/or goods that are performed at least in part on Paradise Island); *In re Cal. Pizza Kitchen Inc.*, 10 USPQ2d 1704 (TTAB 1988) (holding CALIFORNIA PIZZA KITCHEN primarily geographically descriptive of restaurant services rendered in California and outside the state as well); *In re Opryland USA Inc.*, 1 USPQ2d 1409 (TTAB 1986) (holding THE NASHVILLE NETWORK primarily geographically descriptive of television production and distribution services provided in Nashville); TMEP §1210.03.

Finally, to establish a goods-place or services-place association, the trademark examining attorney's evidence need only show a "reasonable basis" for concluding that the public is likely to believe that the mark identifies the place from which the goods and/or services originate. *See In re JT Tobacconists*, 59 USPQ2d 1080, 1083-84 (TTAB 2001) (finding that nothing in the record suggested that it would be incongruous or unexpected for the purchasing public to believe that applicant's cigars, cigar cases and humidors, "manufactured products which could have their origin practically anywhere," came from the place named in the mark, as applicant was located in the place and the goods were packaged and shipped from the location, such that consumers would have a reasonable basis to believe the goods came from the place named in the mark); *In re Cambridge Digital Sys.*, 1 USPQ2d 1659, 1661-62 (TTAB 1986) (finding that the location named in the mark was renowned for educational institutions and the record demonstrated the location was a manufacturing and commercial center producing related goods such that purchasers of applicant's goods would reasonably believe they emanate from the place named in the mark); *see also* TMEP §1210.04; *In re Loew's Theatres, Inc.*, 769 F.2d 764, 768, 226 USPQ 865, 868 (Fed. Cir. 1985).

In this case, applicant's address is in Philadelphia, therefore, a services/location association is presumed.

INFORMATION REQUEST

To permit proper examination of the application, applicant must provide a written statement explaining whether the services or any aspect of the services will be rendered in, or will have any other connection with, the geographic location named in the mark. *See* 37 C.F.R. §2.61(b); TMEP §§814, 1210.03. Applicant has a duty to respond directly and completely to this requirement for information. *See In re Ocean Tech., Inc.*, 2019 USPQ2d 450686, at \*2 (TTAB 2019) (citing *In re AOP LLC*, 107 USPQ2d 1644, 1651 (TTAB 2013)); TMEP §814. Failure to comply with a requirement for information is an independent ground for refusing registration. *In re SICPA Holding SA*, 2021 USPQ2d 613, at \*6 (TTAB 2021) (citing *In re Cheezwhse.com, Inc.*, 85 USPQ2d 1917, 1919 (TTAB 2008); *In re DTI*

*P'ship LLP*, 67 USPQ2d 1699, 1701-02 (TTAB 2003); TMEP §814).

## SUPPLEMENTAL REGISTER/SECTION 2(f) ADVISORY

The applied-for mark has been refused registration on the Principal Register. Applicant may respond to the refusal by submitting evidence and arguments in support of registration and/or by amending the application to seek registration on the Supplemental Register. *See* 15 U.S.C. §1091(c); 37 C.F.R. §§2.47, 2.75(a); TMEP §§801.02(b), 816. Amending to the Supplemental Register does not preclude applicant from submitting evidence and arguments against the refusal(s). TMEP §816.04.

The applied-for mark has been refused registration on the Principal Register. Applicant may respond by submitting evidence and arguments against the refusal. In addition, applicant may respond by doing one of the following: (1) amending the application to seek registration under Trademark Act Section 2(f), or (2) amending the application to seek registration on the Supplemental Register. *See* 15 U.S.C. §§1052(f), 1091(c).

To seek registration on the Principal Register based on a claim of acquired distinctiveness under Section 2(f), applicant generally may (1) submit actual evidence that the mark has acquired distinctiveness of the goods and/or services, (2) claim ownership of an active prior U.S. registration for the same mark for sufficiently similar goods and/or services, or (3) provide the following verified statement of five years' use: "**The mark has become distinctive of the goods and/or services through the applicant's substantially exclusive and continuous use of the mark in commerce that the U.S. Congress may lawfully regulate for at least five years immediately before the date of this statement.**" *See* 15 U.S.C. §1052(f); 37 C.F.R. §2.41(a); TMEP §§1212.03-.06 *et seq.*

To amend the application to the Supplemental Register, applicant must provide a written statement requesting that the application be amended to the Supplemental Register. TMEP §816.01; *see* 15 U.S.C. §1091(c); 37 C.F.R. §2.47.

Although registration on the Supplemental Register does not afford all the benefits of registration on the Principal Register, it does provide the following advantages to the registrant:

(1)    Use of the registration symbol ® with the registered mark in connection with the designated goods and/or services, which provides public notice of the registration and potentially deters third parties from using confusingly similar marks.

(2)    Inclusion of the registered mark in the USPTO's database of registered and pending marks, which will (a) make it easier for third parties to find it in trademark search reports, (b) provide public notice of the registration, and thus (c) potentially deter third parties from using confusingly similar marks.

(3)    Use of the registration by a USPTO trademark examining attorney as a bar to registering confusingly similar marks in applications filed by third parties.

(4)    Use of the registration as a basis to bring suit for trademark infringement in federal court, which, although more costly than state court, means judges with more trademark experience, often faster adjudications, and the opportunity to seek an injunction, actual damages, and attorneys' fees and costs.

(5)    Use of the registration as a filing basis for a trademark application for registration in certain foreign countries, in accordance with international treaties.

*See* 15 U.S.C. §§1052(d), 1091(c), 1094; J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* §§19:33, 19:37 (rev. 4th ed. Supp. 2017).

## DISCLAIMER GENERIC MATTER SUPPLEMENTAL REGISTER/§2(F) ADVISORY

Applicant is advised that, if the application is amended to seek registration on the Principal Register under Trademark Act Section 2(f) or on the Supplemental Register, applicant will be required to continue to disclaim "WINE SCHOOL" because such wording appears to be generic in the context of applicant's goods and/or services. *See* 15 U.S.C. §1056(a); *In re Wella Corp.*, 565 F.2d 143, 144, 196 USPQ 7, 8 (C.C.P.A. 1977); *In re Creative Goldsmiths of Wash., Inc.*, 229 USPQ 766, 768 (TTAB 1986); TMEP §1213.03(b).

Applicant must keep the following disclaimer if applicant seeks to amend to the Supplemental Register or provide a 2(f) claim:

**No claim is made to the exclusive right to use "WINE SCHOOL" apart from the mark as shown.**

TMEP §1213.08(a)(i).

For an overview of disclaimers and instructions on how to provide one using the electronic response form, see the Disclaimer webpage.

## RESPONSE GUIDELINES

For this application to proceed, applicant must explicitly address each refusal and/or requirement in this Office action. For a refusal, applicant may provide written arguments and evidence against the refusal, and may have other response options if specified above. For a requirement, applicant should set forth the changes or statements. Please see "Responding to Office Actions" and the informational video "Response to Office Action" for more information and tips on responding.

If applicant does not respond to this Office action within the response deadline mentioned above of the issue/mailing date, or responds by expressly abandoning the application, the application process will end and the trademark will fail to register. *See* 15 U.S.C. §1062(b); 37 C.F.R. §§2.65(a), 2.68(a); TMEP §§718.01, 718.02. Additionally, the USPTO will not refund the application filing fee, which is a required processing fee. *See* 37 C.F.R. §§2.6(a)(1)(i)-(iv), 2.209(a); TMEP §405.04.

When an application has abandoned for failure to respond to an Office action, an applicant may timely file a petition to revive the application, which, if granted, would allow the application to return to active status. *See* 37 C.F.R. §2.66; TMEP §1714. The petition must be filed within two months of the date of issuance of the notice of abandonment and may be filed online via the Trademark Electronic Application System (TEAS) with a $100 fee. *See* 37 C.F.R. §§2.6(a)(15)(ii), 2.66(b)(1).

If applicant has questions regarding this Office action, please telephone or e-mail the assigned trademark examining attorney. All relevant e-mail communications will be placed in the official

application record; however, an e-mail communication will not be accepted as a response to this Office action and will not extend the deadline for filing a proper response. *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05. Further, although the trademark examining attorney may provide additional explanation pertaining to the refusal(s) and/or requirement(s) in this Office action, the trademark examining attorney may not provide legal advice or statements about applicant's rights. *See* TMEP §§705.02, 709.06

Because of the legal technicalities and strict deadlines of the trademark application process, applicant is encouraged to hire a private attorney who specializes in trademark matters to assist in this process. The assigned trademark examining attorney can provide only limited assistance explaining the content of an Office action and the application process. USPTO staff cannot provide legal advice or statements about an applicant's legal rights. TMEP §§705.02, 709.06. See Hiring a U.S.-licensed trademark attorney for more information.

**How to respond.** File a **response form to this nonfinal Office action** or file a **request form for an extension of time to file a response**.

/Ryan Lavoie/
Ryan Lavoie
Trademark Examining Attorney
Law Office 108
(571) 272-6774
Ryan.Lavoie@USPTO.GOV

## RESPONSE GUIDANCE

- **Missing the deadline for responding to this letter will cause the application to abandon.** A response or extension request must be received by the USPTO before 11:59 p.m. **Eastern Time** of the last day of the response deadline. Trademark Electronic Application System (TEAS) system availability could affect an applicant's ability to timely respond. For help resolving technical issues with TEAS, email TEAS@uspto.gov.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.** If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

**United States Patent and Trademark Office (USPTO)**

# USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on July 28, 2025 for
**U.S. Trademark Application Serial No. 98869526**

A USPTO examining attorney has reviewed your trademark application and issued an Office action. You must respond to this Office action to avoid your application abandoning. Follow the steps below.

**(1) Read the Office action**. This email is NOT the Office action.

**(2) Respond to the Office action by the deadline** using the Trademark Electronic Application System (TEAS). Your response, or extension request, must be received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the response deadline. Otherwise, your application will be abandoned. See the Office action itself regarding how to respond.

**(3) Direct general questions** about using USPTO electronic forms, the USPTO website, the application process, the status of your application, and whether there are outstanding deadlines to the Trademark Assistance Center (TAC).

After reading the Office action, address any question(s) regarding the specific content to the USPTO examining attorney identified in the Office action.

# GENERAL GUIDANCE

- **Check the status of your application periodically** in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

- **Update your correspondence email address** to ensure you receive important USPTO notices about your application.

- **Beware of trademark-related scams**. Protect yourself from people and companies that may try to take financial advantage of you. Private companies may call you and pretend to be the USPTO or may send you communications that resemble official USPTO documents to trick you. We will never request your credit card number or social security number over the phone. Verify the correspondence originated from us by using your serial number in our database, TSDR, to confirm that it appears under the "Documents" tab, or contact the Trademark Assistance Center.

- **Hiring a U.S.-licensed attorney.** If you do not have an attorney and are not required to

have one under the trademark rules, we encourage you to hire a U.S.-licensed attorney specializing in trademark law to help guide you through the registration process.  The USPTO examining attorney is not your attorney and cannot give you legal advice, but rather works for and represents the USPTO in trademark matters.