**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PHILLYWINE LLC,<br><br>      Plaintiff,<br><br>v.<br><br>KSWCO LLC, SALKEDS LLC, THE<br>NATIONAL WINE SCHOOL LLC, ALANA<br>ZERBE and KEITH WALLACE,<br><br>      Defendants. | Case No. 2:26-cv-01268-JDW |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

Defendants KSWCO LLC, SALKEDS LLC, The National Wine School LLC, Alana Zerbe, and Keith Wallace (collectively, "Defendants"), by and through their undersigned counsel, hereby submit this Sur-Reply in Opposition to Plaintiff PhillyWine LLC's ("Plaintiff") Motion for Preliminary Injunction.

## I.    ARGUMENT

Defendants file this Sur-Reply to briefly respond to several of Plaintiff's arguments. ***First***, even if "PhillyWine" were a protectable mark, which it is not, Plaintiff has not established that any common law protection afforded to the alleged mark transferred to PhillyWine LLC when it was formed in 2022. Plaintiff's entire infringement argument is premised on its mistaken belief that it has common law protection over "PhillyWine.com" and "PhillyWine," and thus also has protection over "Philly Wine School." The reason Plaintiff claims protection over the first two marks is that it allegedly acquired a predecessor entity from sole proprietor Neal Ewing that had registered the domain phillywine.com in 1999. But Plaintiff admits for the first time in its Reply that Neal Ewing did not transfer any alleged intellectual property rights in writing. *See* Kirkland Second Decl. (ECF 30-1) ¶ 5. This is insufficient to carry Plaintiff's burden.

Plaintiff's only evidence of the alleged transfer is the conclusory say-so of two interested parties, Mr. Ewing and Dr. Kirkland. *See* ECF 30 at 4. Plaintiff argues that this alone is sufficient evidence of the alleged transfer, but the very case Plaintiff relies on in support of this proposition undercuts Plaintiff's argument. *See* ECF 30 at 4 n.3 (citing *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F. 3d 812, 822 (3d Cir. 2006)). While the Third Circuit did note that "clear and uncontradicted oral testimony" *could* be used as evidence of an assignment in the absence of a writing, it cautioned courts to require "strong evidence to establish an assignment is appropriate both to prevent parties from using self-serving testimony to gain ownership of trademarks and to give parties incentive to identify expressly the ownership of the marks they employ." *Id.* The court then held that the "self-serving testimony of one of [the plaintiff's] principals" concerning the alleged assignment was not strong evidence establishing assignment and was thus "insufficient to prove a trademark assignment as a matter of law." *Id.*; *see also Cobra Enters., LLC v. All Phase Servs., Inc.*, No. 20–04750, 2023 WL 3916276, at **4-5 (D.N.J. June 9, 2023) (declining to take the affiant at his word about an oral assignment that was only supported by bare bones assertions and lacked evidence). Given Plaintiff did not even exist until 2022 and Defendants provided objective evidence that it used the mark as early as 2005, Plaintiff cannot meet its heavy burden of likelihood of success on the merits necessary to obtain a preliminary injunction based on this mere say-so.

The Federal Rules of Civil Procedure and Evidence cited by Plaintiff also do not support its argument that the Kirkland and Ewing Declarations alone are sufficient proof of the alleged assignment. *See* Fed. R. Civ. P. 56(c)(4) (stating that affidavits/declarations may be used to support a motion for summary judgment, must set out facts that would be admissible in evidence, and must show the affiant/declarant is competent to testify on the matters stated); Fed. R. Evid. 602 (explaining a witness may only testify to matters of which the witness has personal knowledge).

Even if Mr. Ewing's rights to "PhillyWine.com" and "PhillyWine" were transferred to it, Plaintiff does not possess common law protection over "PhillyWine.com" and "PhillyWine," to the extent such marks are even protectable.  Plaintiff has not demonstrated its continuous use of "PhillyWine" in commerce, nor that "PhillyWine" has acquired a secondary meaning as to Plaintiff. Plaintiff contends that its "longstanding use of PhillyWine and PhillyWine.com is not truly disputed." ECF 30 at 3. While Defendants do not dispute Mr. Ewing's use of "PhillyWine.com" since 2001, it is disputed, among other things, that Mr. Ewing's use of "PhillyWine" to refer to his business was *continuous* and that Plaintiff's use of "PhillyWine" axiomatically applies to Defendants' mark "Philly Wine School." As Defendants previously demonstrated in their Response in Opposition, Mr. Ewing mainly used "Neal Ewing Wine Services" to refer to the business that eventually became Plaintiff. *See* ECF 25 at 16-17. It was not until 2022 that Plaintiff's use of "PhillyWine" became continuous.

Plaintiff's supposed evidence of its number of customers and money earned in sales and spent on advertising does not advance its position. Plaintiff cites only the Kirkland Declaration as evidence of these factors. But this declaration does not specify which customers and money arose under the "Neal Ewing Wine Services" brand and which arose under Plaintiff's PhillyWine LLC brand. *See* ECF 30 at 4. It also does not specify whether the "six figures" spent on advertising were advertisements of "Neal Ewing Wine Services,"  "PhillyWine," "PhillyWine.com," or some other mark entirely. *See id.* If Plaintiff did indeed spend six figures advertising "PhillyWine," then surely it would have submitted ample support of this use. Given the volume of the Plaintiff's submission, its omission of any real support on this point speaks volumes.

Additionally, Plaintiff does not dispute that its use of "PhillyWine" is non-exclusive, but instead argues that the other entities that use "PhillyWine" are in the wine industry but do not offer wine classes. *See* ECF 30 at 3. This argument is misleading—when examining the "non-exclusive

use" factor, courts assess the exclusivity of the mark's use in the same industry, not whether the marks are used to describe the same service within the industry. *See Com. Nat'l Ins. Servs., Inc. v. Com. Ins. Agency, Inc.*, 214 F.3d 432, 440 (3d Cir. 2000) (holding no secondary meaning was established where the plaintiff used the term at issue in the banking industry while the defendant used it in the insurance industry). Indeed, the fact that a variety of Philadelphia businesses use "PhillyWine" in a variety of contexts within the wine industry places a higher evidentiary burden on Plaintiff to prove that "PhillyWine" has acquired secondary meaning as to it. *See id.* at 440-41 ("[The plaintiff] is also attempting to establish rights to a commonplace, descriptive term used by a variety of businesses in a variety of contexts. In these circumstances, the evidentiary bar must be placed somewhat higher.").

*Second*, Plaintiff has not established that it qualifies for common law protection over "Philly Wine School." Incredibly, Plaintiff admits it "did not regularly use 'Philly Wine School.'" Because "Philly Wine School" is the mark at issue, that admission should end this entire case. Plaintiff does point to an instance where a third party referred to it as "Philly Wine School" in 2022. *See* ECF 30 at 5. However, even if that single instance supported Plaintiff in light of its own admission of not using the mark, Plaintiff cannot rely on that one article while simultaneously discrediting instances in media where Defendants were referred to as "Philly Wine School." *See id.* at 1-2 (arguing that media references calling Defendants "Philly Wine School" are not sufficient because the true test is whether the party claiming the mark used it commerce).

Further, Plaintiff's argument that "School" and ".com" are generic actually support Defendants. Defendants do not in any way dispute that "School" is generic. Defendants' position is that the combination of all three otherwise generic terms—"Philly" plus "Wine" plus "School"—makes "Philly Wine School" distinctive enough for trademark protection. Indeed, this was recognized by the USPTO when it issued the registration certificate after reviewing

4

Defendants' evidence of the mark's acquired distinction as to Defendants and requiring Defendants to disclaim "WINE SCHOOL." *See generally* ECF 1-14 (USPTO refusal of Defendants' initial registration application); ECF 1-15 (Defendants' response to the USTPO refusal, attaching evidence of the mark's acquired distinction); ECF 1-17 (USPTO registration certificate for "Philly Wine School"). Just as Defendants have no property right over "WINE SCHOOL," Plaintiff can have no property right over "PHILLY WINE." The two terms standing alone are equally generic.

*Third*, Plaintiff's argument regarding the likelihood of confusion is predicated on the false premise that Plaintiff owns a mark at all. While the *Lapp* factors weigh in Defendants' favor, *see* ECF 25 at 22–24, application of these factors is only appropriate where the party asserting trademark protection actually owns a mark. *See Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983) (enumerating the factors courts should assess when determining whether "a **trademark owner** [has] demonstrate[d] [a] likelihood of confusion") (emphasis added). Because Plaintiff has no rights to "PhillyWine" or "Philly Wine School," assessment of the *Lapp* factors has no bearing in this dispute.

*Fourth*, Plaintiff still has not carried its heavy burden of proof to invalidate Defendants' "Philly Wine School" mark based on fraud. *See* ECF 25 at 25-28. To succeed on invalidating Defendants' mark on the basis of fraud, Plaintiff must prove **each element** of its fraud claim "'to the hilt' with clear and convincing evidence." *See Pac-West Distrib. NV LLC v. AFAB Indus. Servs., Inc.*, 674 F. Supp. 3d 132, 142, 142 n.6 (E.D. Pa. 2023) (citing the factors required to prove fraud on the USPTO and explaining that "to the hilt" means **each factor** must be proved through clear and convincing evidence) (internal quotations omitted).

Rather than even attempting to prove that the USPTO was defrauded, Plaintiff asks the Court to entirely disregard the presumption of secondary meaning owed to Defendants and instead

conduct a *de novo* review of what evidence is sufficient to prove secondary meaning. For example, Plaintiff has not shown through clear and convincing evidence that Mr. Wallace's representations to the USPTO were knowingly false when made. Plaintiff's argument on this factor is based largely on Plaintiff's self-serving conflation of "PhillyWine" and "Philly Wine School." *See* ECF 30 at 8. Plaintiff contends Mr. Wallace must have known his claim of exclusive use of "Philly Wine School" and that no similar mark existed were false because "Defendants knew of Plaintiff's longtime use" of PhillyWine. *Id.* But as discussed, Plaintiff does not have rights to "PhillyWine" or "Philly Wine School," admitting that it "did not regularly use 'Philly Wine School.'" *Id.* at 5. Given Plaintiff's bait-and-switch, Mr. Wallace's declaration that he did not know of Plaintiff's purported use of "Philly Wine School" until 2024 was truthful. Wallace Decl. ¶ 83.

Moreover, as Plaintiff well knows, the specific representations it takes issue with are only a small portion of the evidence Defendants submitted to the USPTO. *See generally* ECF 1-15. Plaintiff can only speculate as to whether these few alleged misrepresentations were actually relied on by the USPTO when issuing the registration certificate, and of the two documents that Plaintiff identified, it is rank speculation whether the exclusion of those documents would have changed the USPTO's determination. *See In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (noting "[t]here is no room for speculation, inference or surmise" on a claim of fraud against the USPTO). Without clear and convincing evidence of the elements required to prove fraud on the USPTO, Plaintiff's attempt to invalidate Defendants' mark fails.

*__Fifth__*, Plaintiff failed to respond to Defendants' irreparable harm argument in any meaningful way. Plaintiff tries to argue that there is immediate and irreparable harm to its goodwill if relief is not granted. But the harm cited by Plaintiff has been caused by Plaintiff. For example, the instances of actual confusion Plaintiff relies on arose in 2025 and 2026, only after Plaintiff began using Defendants' mark. *See* ECF 25 at 24, 29; Wallace Decl. ¶¶ 83, 86-89. Plaintiff does

not, and cannot, point to other instances of actual confusion arising before 2025, despite Defendants using "Philly Wine School" since 2005. Similarly, Plaintiff only changed its Instagram handle from @_phillywine_ to @phillywineschool in January 2025. Wallace Decl. ¶ 87. Defendants, on the other hand, have been using the Instagram handle @phillywine *since 2016*, years before Plaintiff even joined Instagram (or even existed). *Id.* ¶ 68. While Plaintiff claims that Defendants failed to respond to its baseless claim that Mr. Wallace only registered @phillywine in 2016 to spite Mr. Ewing, it misses the obvious point that Mr. Wallace using this mark for the past decade shows that any harm associated with Defendants using Plaintiff's purported mark is anything but immediate.

## II.    CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court deny Plaintiff's Motion for Preliminary Injunction.

Dated: April 1, 2026

By:    */s/ David A. Rodkey*

Christopher C. Nana-Sinkam (ID No. 320189)
David A. Rodkey (ID No. 325698)
Stanford B. Ponson (ID No. 322548)
Samantha A. Gill (ID No. 335915)
**DILWORTH PAXSON LLP**
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7000
drodkey@dilworthlaw.com
cns@dilworthlaw.com
sponson@dilworthlaw.com
sgill@dilworthlaw.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on April 1, 2026, pursuant to the Federal Rules of Civil Procedure, the foregoing was served through the Court's CM/ECF System.

*/s/ David A. Rodkey*

## **CERTIFICATION**

The undersigned counsel certifies that pursuant to Local Civil Rule 7.1 and this Court's Policies and Procedures concerning the Length of Briefs, they have used double-spaced and proportionally spaced 12-point font with at least one inch margins and certifies that the total number of words in the brief, inclusive of point headings and footnotes, and exclusive of the caption, table of contents, table of authorities, and signature block, is 2,047 words, according to the word count provided by Microsoft Word processing software.

Dated: April 1, 2026

*/s/ David A. Rodkey*_____
Christopher C. Nana-Sinkam, Esq.
David A. Rodkey, Esq.
Stanford B. Ponson, Esq.
Samantha A. Gill, Esq.
**DILWORTH PAXSON LLP**
1650 Market Street, Suite 1200
Philadelphia, PA 19103
(215) 575-7000
drodkey@dilworthlaw.com
cns@dilworthlaw.com
sponson@dilworthlaw.com
sgill@dilworthlaw.com
*Attorneys for Defendants*